UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PRECIOUS SEGUIN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2442** |
| **REMINGTON ARMS COMPANY, LLC, ET AL.** | **SECTION "B"(2)** |

### ORDER AND REASONS

Before the Court are two motions. The first is Precious Seguin's ("Plaintiff" or "Precious") "Motion for Partial Summary Judgment" (Rec. Doc. 61) claiming that offensive collateral estoppel should preclude Remington Arms Company, LLC ("Remington" or "Defendant") from re-litigating the issue of the existence of a product defect. Remington timely filed an opposition memorandum (Rec. Doc. 87), and the Court granted leave for Plaintiff to file a reply memorandum. Rec. Doc. 119. The second is "Remington's Motion to Exclude the Testimony and Causation Opinion of Plaintiff's Liability Expert and Incorporated Motion for Summary Judgment." Rec. Doc. 53. Plaintiff timely filed an opposition memorandum thereto (Rec. Doc. 77), and the Court granted Defendant leave to file a reply. Rec. Doc. 116. For the reasons enumerated below,

**IT IS ORDERED** that both motions are **DENIED**.

1

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of a tragic hunting accident in which Precious Seguin suffered significant injuries. On October 28, 2013, Precious went with her family to their hunting lease in Loranger, Louisiana. Rec. Docs. 61-3 at 1; 87-1 at 1. That evening, Precious went out into the woods with her father, James Seguin, Jr. ("J.R."), her brother, James Seguin, III ("Bubba"), and a family friend, Matthew Perilloux, to hunt for a deer that had allegedly been injured earlier in the day by another relative. Rec. Docs. 53-3 at 2; 61-3 at 1-2. Precious's mother, Joy Seguin, remained in their vehicle. Rec. Doc. 61-3 at 2. According to both J.R. and Bubba, when they arrived at the hunting site and got out of the vehicle, Bubba handed his father a Remington Model 710 bolt-action rifle ("M710") with the manual safety in the "SAFE" position. Rec. Docs. 53-3 at 2; 61-3 at 2.

The group proceeded to search for signs of the injured deer in an area thick with trees and brush. Rec. Docs. 53-3 at 2; 61-3 at 2. As the party traveled, they moved single file in the following order from first to last: Perilloux, J.R., Precious, and then Bubba. Rec. Docs. 53-3 at 3; 61-3 at 2. It is at this point that the facts become less clear. Plaintiff maintains that, at one point, she bent over, facing the opposite direction of the group, to look for a blood trail. Rec. Doc. 61-3 at 2. She claims that, as she bent over, J.R. held the strap of the rifle with his right

2

hand and his flashlight in his left. *Id.* at 3. As he moved forward, the rifle allegedly got tangled in the brush. *Id.* at 2. When a branch struck the rifle it purportedly swung backwards with the barrel pointing toward Precious who was still bent over with her back to her father. *Id.* at 2-3. The rifle fired and a bullet struck Precious in her right buttocks, traveling through her hip and exiting through her right elbow. *Id.* at 3. She was flown to the nearest trauma center in Baton Rouge. *Id.* Precious has since incurred multiple surgeries and may require additional surgeries in the future. *Id. See also* Rec. Doc. 87-1 at 4.

While Defendant acknowledges J.R.'s deposition testimony in which he states that the rifle was slung over his right shoulder with the barrel pointing in the air, Defendant also points to statements allegedly made by J.R. to a sheriff's deputy in the aftermath of the accident where J.R claims to have had the barrel facing the ground. Rec. Doc. 53-3 at 2-3. According to that same report, the thick brush forced Precious to crawl *ahead* of the group. *Id.* at 3. It was then that a branch supposedly hit the muzzle of the gun, lifted it upwards towards Precious, and caused it to discharge. *Id.* at 3. Defendant admits that the bullet struck Precious causing significant injuries and forcing her to undergo multiple surgeries. Rec. Doc. 87-1 at 4. However, Defendant contests whether additional surgeries will be required. *Id.*

3

On October 24, 2014, Precious, J.R., Joy, and Bubba filed suit against Remington, Sporting Goods Properties, Inc. ("SPS"), and E.I. du Pont de Nemours and Company ("E.I") seeking damages on several grounds. Rec. Doc. 1. Plaintiffs then amended their complaint, naming Remington as the lone defendant. Rec. Doc. 8. They then voluntarily dismissed SPS and E.I. Rec. Doc. 13. On July 5, 2016, this Court granted Plaintiffs' unopposed motion to dismiss with prejudice all claims brought by Joy, J.R., and Bubba. Rec. Doc. 125. Accordingly, the only remaining claims are Precious's products liability claims against Remington.

## II.   LAW AND ANALYSIS

### a. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). Both parties seek summary judgment on different elements of Plaintiff's products liability claim.

In Louisiana, the Louisiana Products Liability Act ("LPLA") provides the exclusive remedy for plaintiffs seeking to recover from manufacturers for damage caused by their products.[1] La. Stat. Ann. § 9:2800.52. *See also Grenier v. Med. Eng'g Corp.*, 243 F.3d

---

[1] The parties do not contest the applicability of the LPLA in this matter.

200, 203 (5th Cir. 2001). A plaintiff must establish four elements to succeed on an LPLA claim:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002) (citing L$_A$. S$_{TAT}$. A$_{NN}$. § 9:2800.54(A)). Under the LPLA, a product is unreasonably dangerous if it meets one of the following criteria:

> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9.2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:28000.58; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

*Id.* (citing La. Stat. Ann. § 9:2800.54(B)). The burden of proof as to each element rests with the claimant. L$_A$. S$_{TAT}$. A$_{NN}$. § 2800.54(D). Plaintiff's Amended Complaint invokes criteria one through three as bases for the rifle being unreasonably dangerous—the presence of a manufacturing defect, the presence of a design defect, and a

6

lack of adequate warnings. Rec. Doc. 8 at 7-11. However, Plaintiff's motion only seeks summary judgment on the issue of the alleged design defect.[2]

### b. Plaintiff's Motion for Partial Summary Judgment

#### 1. The parties' contentions

Plaintiff argues that offensive collateral estoppel should preclude Remington from relitigating the design defect at issue here. Rec. Doc. 61-2 at 14. Plaintiff argues that offensive collateral estoppel should apply because three cases have already reached a judgment on the merits concerning a design defect in the Remington M700 rifle. *Id*. (citing *Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104 (8th Cir. 1988); *Campbell v. Remington Arms Co.*, 958 F.2d 376 (9th Cir. 1992); *Collins v. Remington Arms Co., Inc.*, 1994 WL 866816 (Tex. Dist. May 1, 1994)). Seguin maintains that all elements of collateral estoppel are met because: (1) Remington was an original party to all three of those suits; (2) the Model 700 ("M700") product defect was litigated and tried in each case; (3) Remington had a fair opportunity to litigate the issue; and (4) there was a valid and final judgment in each case establishing that the M700 is defective and unreasonably dangerous. *Id.* at 14-18.

---

[2] Plaintiff's motion repeatedly references the issue of a "product defect" in a general sense, which could refer to either a design defect or a manufacturing defect. However, because Plaintiff's motion claims that the cases it relies upon found a "design defect" (Rec. Doc. 61 at 1), the Court reads Plaintiff's motion as only seeking summary judgment on the issue of a design defect.

7

Defendant's memorandum in opposition first points out that Plaintiff's motion conveniently misstates that the rifle at issue here is a Model 700 when, in fact, the Seguins' rifle was a Model 710. Rec. Doc. 87 at 1. Remington argues that, because the rifle here is an M710 and the rifle at issue in the cases cited by Plaintiff is an M700, an identical issue was not litigated in those cases, meaning collateral estoppel is inapplicable. *Id*. at 2. Remington also claims that Plaintiff misstates the background and legal holdings of the cases upon which it relies. *Id*. Finally, Defendant avers that offensive collateral estoppel is inapplicable where there are inconsistent judgments on the issue. *Id*. at 3 (claiming that Plaintiff failed to identify other relevant cases that reach an opposite conclusion).

In reply, Plaintiff contends that she mistakenly referred to the subject rifle as an M700 throughout her motion and supporting memorandum. Rec. Doc. 119 at 2. Nevertheless, for the first time, Plaintiff addresses the differences between the M700 and M710 in her reply memorandum, claiming that fire control system in the M710 is the "functional equivalent" of the M700. *Id*. Accordingly, Plaintiff argues that they have the same design defect and that collateral estoppel should still apply. Furthermore, Seguin argues that the cases upon which Remington relies do not preclude the application of offensive collateral estoppel because those decisions rest on the issue of causation rather than design defect.

8

*Id.* at 4-7. Plaintiff thus maintains that the Court should apply offensive collateral estoppel to preclude relitigation of the issue of a design defect.

### 2. Discussion

Courts must address the same four elements for both offensive and defensive collateral estoppel. *Landry v. G.C. Constructors*, 802 F. Supp. 2d 827, 831 (S.D. Miss. 2011) (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998)). The four necessary conditions for the application of collateral estoppel, or issue preclusion, are:

> (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine.

*Winters*, 149 F.3d at 391 (quoting *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995)). Importantly, district courts have "*broad* discretion to determine whether collateral estoppel is appropriately employed offensively to preclude issue relitigation." *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)) (emphasis in original). Additionally, where the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow its use. *Parklane*, 439 U.S. at 331. The primary issue here is the first element—whether

9

the issues decided in the cases cited by Plaintiff are identical to the issue in this case.

After ignoring the issue in her initial motion and supporting memorandum, Plaintiff argues in her reply brief that the alleged defect at issue here is identical to that in *Lewy*, *Campbell*, and *Collins* because the M710 rifle has a "Walker" fire control system that is functionally equivalent to the Walker fire control system in the M700. Rec. Doc. 108-2 at 2. To support this claim, Plaintiff points to the report of her expert, Charles Powell. *Id*. In his report, Powell does in fact assert that the Walker design in the M710 is functionally equivalent to that of the M700. Rec. Doc. 53-4 at 4. However, he also acknowledges that the M710 version of the Walker design is "slightly different from the Model 700 in its dimensions and use of a polymer side plate." *Id*. The fact that the design is slightly different, even if functionally equivalent, necessarily means that it is not identical.

Moreover, the fact that Plaintiff's expert deems it functionally equivalent does not in fact render it so. It is at least conceivable that the alterations to the M710 firing system could have corrected the defect found in earlier M700 cases. Plaintiff also does not claim that Remington has had the opportunity to litigate the differences and similarities between the M700 and the M710. Thus, to adopt Plaintiff's expert's opinion as fact and deem the issues identical would not only be outside

the scope of this Court's responsibility at the summary judgment stage, but it would prove unfair to Defendant because this exact issue has not yet been litigated. It would therefore be unfair to Defendant and an abuse of discretion to apply offensive collateral estoppel in this case.

Furthermore, the Court stresses that Plaintiff's repeated misstatements of fact regarding the rifle model at issue in this case, as well as Plaintiff's argument that the issues are identical despite the different models of rifle, appear to constitute violations of Rule 11(b). FED. R. CIV. P. 11(b). In some cases, the exact model of weapon may prove immaterial. However, in this instance, where Plaintiff presents the Court with the claim that *identical* issues exist in this case and those cited, the exact model of weapon is undoubtedly material. It is absolutely implausible that Plaintiff could misidentify the rifle model in *every instance* in her initial motion,[3] only to realize her mistake once Defendant raised the issue in its opposition. The claimed inadvertence is also belied by certain statements included within the motion. *See, e.g.,* Rec. Doc. 61-2 at 15 ("[t]hese are *the same rifles* which include the one at issue herein") (emphasis added). Finally, it is not as if Plaintiff or her counsel were previously unaware of the actual rifle model as they properly identified it

---

[3] *See* Rec. Doc. 61-2 at 4, 5, 6, 8, 14, 15, 16, 17, 19. In fact, Plaintiff's motion and memorandum in support do not include a single reference to the Model 710 rifle. *See* Rec. Docs. 61, 61-2.

11

in their Amended Complaint and other filings. *See, e.g.,* Rec. Doc. 8. Plaintiff and Plaintiff's counsel are warned that any further conduct along these lines may result in sanctions.

### c. Defendant's Motion to Exclude Testimony and for Summary Judgment

#### 1. The parties' contentions

Remington first urges this Court to exclude the causation opinion of Plaintiff's expert, Charles Powell, as unreliable under *Daubert*. Rec. Doc. 53-3 at 14-17. Remington argues that his causation opinion is unreliable because: (1) his opinion regarding a design defect causing Plaintiff's injuries does not fit the facts of this case, and (2) he cannot exclude other possible explanations for the shooting. *Id*. at 14. Defendant further claims that, because Powell's causation opinion is inadmissible speculation, Plaintiff cannot establish the indispensable causation element. *Id*. at 18. Accordingly, Remington asks the Court to grant summary judgment in its favor.

In opposition, Plaintiff argues that Powell's causation opposition is adequately supported by the evidence. Rec. Doc. 77-1 at 6. She further contends that Remington's arguments have been rejected in other similar cases. *Id*. at 10-11. Because Defendant's summary judgment motion relies solely on the success of the *Daubert* challenge, Plaintiff avers that the motion must be denied.

In its reply memorandum, Remington claims that Plaintiff's failure to contest certain facts and propositions demonstrates the deficiency of her argument. Rec. Doc. 105-2 at 1. Defendant then reurges to the Court that Powell's expert opinion is based on insufficient facts. *Id.*

### 2. Discussion

One of the four elements required to establish a violation of the LPLA is that a characteristic of the product proximately caused the claimant's damages. *Stahl*, 283 F.3d at 260-61 (citing LA. STAT. ANN. § 9:2800.54(A)). Here, Defendant challenges the testimony of Plaintiff's expert as to causation. In his expert report, Powell concludes that:

> In the subject Model 710 rifle, interferences with the fire control components produced inadequate sear-connector engagement and allowed the impact contact [sic] of its muzzle with a tree branch to jar the rifle and release the firing pin and fire the subject rifle without any interaction with the trigger. Debris and old lubricant were observed and photographed in the subject rifle's fire control that cause connector interferences and defective engagement with the sear. . . . Mr. Seguin's hand was well away from the rifle trigger at the time of discharge and the trigger was protected by the Model 710 polymer trigger guard from contact with clothing and tree limbs in its rotational plane.

Rec. Doc. 53-4 at 7. Based on these issues, Powell maintains that the rifle either discharged from contact to the barrel while the safety was in the "FIRE" position (a "jar-off") or from contact to

13

the safety, which caused the safety to move from "SAFE" to "FIRE" and then caused the rifle to discharge (a fire on safety release or "FSR"). *See* Rec. Doc. 53-5 at 14. Remington claims this causation opinion is unreliable and thus inadmissible.

"The Supreme Court's landmark case of *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, provides the analytical framework for determining whether expert testimony is admissible under Rule 702 of the Federal Rules of Evidence." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002) (citing *Daubert*, 509 U.S. 579 (1993)). Expert testimony must be both relevant and reliable to be admissible. *Id*. at 244. In *Daubert*, the Supreme Court provided an illustrative list of factors to use in evaluating the reliability of such testimony: (1) whether the theory can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether it has a known or potential rate of error; and (4) whether it is generally accepted in the relevant scientific community. *Id*. (citing *Daubert*, 509 U.S. at 593-94). However, the *Daubert* analysis is a flexible one. *Id*. (citing *Kumho Tire Co v. Carmichael*, 526 U.S. 137 (1999)).

Remington's first argument is that Powell's expert opinion is inadmissible because it is not supported by the facts. Remington aims to support this argument by claiming that during all of the testing conducted by Powell, Defendant's experts, and the Louisiana State Police, the gun never fired without a trigger pull.

14

Rec. Doc. 53-3 at 14-15. Further, Remington refers to Powell's concession that no debris was ever found to be displacing the connector away from the trigger to create a dangerously-low sear engagement. *Id*. at 15. Defendant also directs the Court's attention to the fact that all of the experts' measurements of the sear engagement found it to be within a range deemed safe by Powell. *Id*. Therefore, Remington argues that Powell's conclusion is unsupported by the facts.

Defendant's arguments are flawed in many respects. First, Defendant's claim that the gun never fired without a trigger pull is not totally accurate. In his deposition, Powell testified that when a very small force or pressure was placed on the trigger, the subject rifle would fire if he just tapped it on the examining table. Rec. Doc. 53-5 at 30. Remington also ignores Powell's finding that the type of debris that can displace the connector was found in the fire control. The fact that it was not displacing the connector at the time of inspection does not mean it was not displacing the connector at the time of the incident. In fact, Powell's report claims that particles will redistribute after each fire, meaning that, in his expert opinion, it is unlikely that the particles would have the same placement during examination as they would have immediately prior to the accident. *See* Rec. Doc. 53-4 at 7. Remington's argument regarding the sear engagement during testing suffers from the same logical deficiency. Just because the

15

sear engagement was measured to be sufficiently safe during testing does not eliminate the possibility that it was unsafe prior to the accident. *See Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 990 (11th Cir. 2016).

Remington also claims that Powell must be able to rule out all other possible explanations for his opinion to be reliable. This is simply a distorted interpretation of the law. The plaintiff's burden *at trial* is to prove causation by a preponderance of the evidence, but that is not the standard for admissibility of an expert opinion on the issue of causation. *See Llewellyn v. Lookout Saddle Co.*, 315 So. 2d 69, 71 (La. App. 2 Cir. 1975). The issues here are (1) whether Powell's expert opinion is reliable under *Daubert*, and (2) whether it raises a genuine issue of fact as to causation.

This Court finds that Powell's expert opinion as to causation has sufficient factual support to be considered reliable. Powell claims that the Walker fire control system is a design defect because debris can get caught between the connector and the trigger, causing low sear engagement such that the rifle is vulnerable to inadvertent discharge without a trigger pull. He claims to have found the type of debris that can cause low sear engagement in the fire control system of the subject rifle. He also asserts that, based on the facts before him, the trigger guard should have protected the trigger from clothing and brush in its

rotational plane (assuming the rifle was moving backwards), making an inadvertent trigger pull less likely. Even if the trigger guard failed to protect the trigger, his deposition testimony contends that minimal pressure on the trigger could have led to a discharge with a simple tap to the barrel. *See* Rec. Doc. 53-5 at 30. These facts are enough to support his theory of the events.

While Remington argues that J.R.'s original account of the facts leading up to the incident do not mesh with Powell's causation opinion (because in that account the rifle was supposedly swinging forward), that does not render his opinion inadmissible. Powell stated that, based on all of the evidence before him, he believed it was more likely than not that the events occurred as J.R. described them in his deposition testimony, which led him to his ultimate conclusion. Rec. Doc. 53-5 at 12. If the jury finds that the events occurred as J.R. outlined in his deposition, then Powell's opinion, if taken as true, rules out the possibility of an inadvertent trigger pull. If, on the other hand, the jury finds J.R.'s original statement to the deputy more reliable, Powell's opinion is still relevant though it arguably does not rule out all other potential causes. The Court is satisfied that Powell's opinion has sufficient factual support to survive the present *Daubert* challenge. His opinion testimony as to causation is therefore admissible. Moreover, it raises a genuine issue of fact

as to the proximate cause of Plaintiff's injuries, meaning summary judgment on the causation element is also inappropriate.

### III. CONCLUSION

For the reasons outlined above,

**IT IS ORDERED** that both motions are **DENIED**.[4]

New Orleans, Louisiana, this 18th day of July, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] The Court also expresses its disappointment at the parties' filing of summary judgment motions on issues that they should have realized clearly involve disputed issues of material facts.  Counsel's time and clients' money should have been spent more carefully and prudently.